## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALEXIS SUGGS, | ) | CIVIL ACTION NO.:  2:21-cv-1327 |
| | ) | |
| Plaintiff, | ) | JUDGE: JAY C. ZAINEY |
| | ) | |
| v. | ) | MAGISTRATE: KAREN WELLS ROBY |
| | ) | |
| ALEX MIKKELSEN, JONATHAN | ) | |
| DOWNING, MICHAEL JOHN NACCARI | ) | |
| III, KERRY NAJOLIA, and JOSEPH P. | ) | |
| LOPINTO III, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO EJLD PD DEFENDANTS' PARTIAL MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

PROCEDURAL HISTORY............................................................................................... 6

ARGUMENT ..................................................................................................................... 6

    I.     Standards........................................................................................................ 6

    II.    The Complaint Alleges Facts Demonstrating Continuing Harm ............................ 8

    III.   The Complaint Alleges Facts Demonstrating a Real Threat of Future Harm....... 11

CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Life Ins. Co. v. Haworth*,
    300 U.S. 227 (1937)..................................................................................................11, 14

*Allee v. Medrano*,
    416 U.S. 802 (1974)...........................................................................................................12

*Arnold v. Williams*,
    979 F.3d 262 (5th Cir. 2020) ..............................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................6

*Chevron U.S.A., Inc. v. Traillour Oil Co.*,
    987 F.2d 1138 (5th Cir. 1993) ............................................................................................7

*Church v. City of Huntsville*,
    30 F.3d 1332 (11th Cir. 1994) ..........................................................................................14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................................*passim*

*Crawford v. Hinds Cty. Bd. of Supervisors*,
    1 F.4th 371 (5th Cir. 2021) ...........................................................................................8, 11

*Evers v. Dwyer*,
    358 U.S. 202 (1958)............................................................................................................8

*Flax v. Potts*,
    725 F. Supp. 322 (N.D. Tex. 1989), *aff'd and remanded on other grounds*,
    915 F.2d 155 (5th Cir. 1990) ............................................................................................13

*Frame v. City of Arlington*,
    657 F.3d 215 (5th Cir. 2011) ............................................................................................10

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000)............................................................................................................8

*Hernandez v. Cremer*,
    913 F.2d 230 (5th Cir. 1990) .....................................................................................1, 2, 9

*Honig v. Doe*,
    484 U.S. 305 (1988)..........................................................................................................14

*Inclusive Communities Project, Inc. v. Dep't of Treasury*,
    946 F.3d 649 (5th Cir. 2019) ..............................................................................................6

*LaDuke v. Nelson*,
  762 F.2d 1318 (9th Cir. 1985), *amended in part on other grounds*, 796
  F.2d 309 (9th Cir. 1986) ..............................................................................12

*Maryland State Conference of NAACP Branches v. Maryland Dep't of State
  Police*, 72 F. Supp. 2d 560 (D. Md. 1999) ..................................................13

*MedImmune, Inc v. Genentech, Inc.*,
  549 U.S. 118 (2007).............................................................................10, 11

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) .......................................................................13

*Mohamed v. Holder*,
  266 F. Supp. 3d 868 (E.D. Va. 2017) ............................................................8

*Monell v. Dep't of Social Services*,
  436 U.S. 658 (1978)......................................................................................12

*Mortillaro v. State of La.*,
  356 F. Supp. 521 (E.D. La. 1972)................................................................15

*Nat'l Congress for Puerto Rican Rights v. City of New York*,
  75 F. Supp. 2d 154 (S.D.N.Y. 1999)............................................................13

*Nicacio v. United States I.N.S.*,
  797 F.2d 700 (9th Cir. 1985) .......................................................................13

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)......................................................................................14

*Plumley v. Landmark Chevrolet, Inc.*,
  122 F.3d 308 (5th Cir. 1997) .......................................................................10

*Reed v. Giarrusso*,
  462 F.2d 706 (5th Cir. 1972) .......................................................................11

*Renee v. Peralez*,
  2017 U.S. Dist. LEXIS 122885 (S.D. Tex. Aug. 3, 2017)...............................15

*Spears v. C B & I, Inc.*,
  2014 WL 5453884 (M.D. La. Oct. 27, 2014) ..................................................7

*Spencer v. City of Cibolo*,
  2020 WL 5644884 (W.D. Tex. Sep. 22, 2020)...........................................7, 14

*Steffel v. Thompson*,
  415 U.S. 452 (1974)...................................................................................7, 10

*Super Tire Engineering Co. v. McCorkle*,
  416 U.S. 115 (1974).......................................................................................12

*Thomas v. Cty. of L.A.*,
  978 F.2d 504 (9th Cir. 1992) ..................................................................11, 13

*Wilwal v. Nielsen*,
    346 F. Supp. 3d 1290 (D. Minn. 2018) ...............................................................................9

*Yankton v. Epps*,
    2018 U.S. Dist. LEXIS 44453 (N.D. Miss. Feb. 15, 2018) .................................................7

Plaintiff Alexis Suggs ("Mrs. Suggs" or the "Plaintiff"), by and through her undersigned counsel, submits the following brief in Opposition to the Partial Motion to Dismiss (the "Motion" or "Mot."), ECF No. 18, filed by Defendants Alex Mikkelsen ("Defendant Mikkelsen"), Jonathan Downing ("Defendant Downing"), and Kerry Najolia ("Defendant Najolia") (hereafter, the "EJLD PD Defendants").  As an initial matter, Mrs. Suggs forgoes her request for a speedy hearing in order to ensure adequate time for discovery to fully develop the record in support of her claims.  For the reasons set forth below, Mrs. Suggs respectfully requests that this Court deny the Motion as to Mrs. Suggs's claim for declaratory relief.

## **INTRODUCTION**

Regardless of how often a person drives through an area, and whether it is by necessity or preference, conduct that curtails travel creates an ongoing injury to a fundamental constitutional right.  *See Hernandez v. Cremer*, 913 F.2d 230, 234-35 (5th Cir. 1990) (holding there is a reasonable expectation for a citizen to "exercise his right to travel" and therefore a reasonable expectation he would be subject to a deprivation of his rights in the future).  In her Complaint, Mrs. Suggs seeks a declaration of her constitutional rights relating to searches and seizures so that, among other things, she can drive freely throughout Jefferson Parish, Louisiana.

Defendant Mikkelsen and Defendant Downing[1] violated Mrs. Suggs's constitutional rights by (i) stopping her because of the color of her skin, (ii) unreasonably detaining her in search of non-existent incriminating evidence, and (iii) unlawfully searching and seizing her personal property.  *See* Compl. ¶¶ 3-6, 39, 42, 51.  Because of Defendant Najolia's deficient

---

[1] Defendant Michael John Naccari III ("Defendant Naccari") and Defendant Joseph P. Lopinto III of the Jefferson Parish Sheriff's Office (the "JPSO Defendants") were also involved.  Compl. ¶¶ 5-6.  Since JPSO did not join in the EJLD PD Defendants' Motion, Plaintiff limits mention of the JPSO Defendants in this Opposition.

policies and ongoing failure to properly train, supervise, and discipline EJLD PD officers, Mrs.

Suggs lives in fear of real and imminent repeat constitutional violations.  Compl. ¶¶ 6, 59.  Mrs.

Suggs *has nightmares* about the stop, and the EJLD PD Defendants' flagrant violations of her

Fourth Amendment rights have resulted in Mrs. Suggs's *ongoing* feelings of despair and

displacement leading her to curtail the exercise of her constitutional right to travel.  Compl. ¶

59 (emphasis added).  That her ability to exercise her constitutional right to travel has been

curtailed is sufficient continuing injury for purposes of seeking a declaratory judgment.

*Hernandez*, 913 F.2d at 234-35.

        In addition, the Complaint plausibly alleges a real and imminent risk of future

constitutional violations by the EJLD PD Defendants.  Mrs. Suggs has multiple ties to

Louisiana and fears a repeat occurrence of an illegal stop, which is highly likely considering the

ongoing lack of training and demonstrated history of racialized policing in Metairie and

Jefferson Parish.  *See* Compl. ¶¶ 19-20, 53, 56, 59, 70.  Mrs. Suggs has a home in Louisiana (in

St. Charles Parish).  *See* Compl. ¶ 59.  Restaurants,[2] shopping centers and malls,[3] Walmart,[4]

and the airport[5] are all located nearby in Jefferson Parish.  It is therefore reasonable to infer

Mrs. Suggs regularly travels into Jefferson Parish.  And, as she alleges, EJLD PD officers

routinely engage in traffic stops, with approximately 2,691 traffic tickets issued in the past six

---

[2] *See, e.g.*, Jefferson Parish Restaurants, Visit Jefferson Parish, https://www.visitjeffersonparish.com/restaurants/ (last accessed Nov. 1, 2021).

[3] Shopping Centers and Malls in Jefferson Parish, Visit Jefferson Parish, https://www.visitjeffersonparish.com/things-to-do/shopping/shopping-centers-and-malls/ (last accessed Nov. 1, 2021).

[4] Locations, Walmart, https://www.walmart.com/store/989-metairie-la?cn=Tracking_local_pack_1 (last accessed Nov. 1, 2021) (listing the location of a Walmart in Metairie, Louisiana).

[5] *See* Airport, Visit Jefferson Parish, https://www.visitjeffersonparish.com/about-us/transportation/airport/ (last accessed Nov. 1, 2021).

years.  Compl. ¶ 70.  EJLD PD has a practice of racial profiling and a continuing policy of failing to train EJLD PD officers on how to lawfully conduct traffic stops.  *See* Compl. ¶¶ 51, 56, 70.  Furthermore, EJLD PD continues to employ the EJLD PD Defendants involved in this case, and did not meaningfully investigate Mrs. Suggs's racial profiling complaints, thereby condoning and encouraging their unconstitutional conduct.  Compl. ¶¶ 81-91.  Mrs. Suggs therefore has sufficiently alleged a real risk of a repeat racial profiling encounter with the EJLD PD when driving in Jefferson Parish in the future.  Accordingly, she has alleged facts reflecting a live and actual controversy relating to her constitutional rights sufficient at this stage of the case to proceed with her claim for declaratory relief.

The EJLD PD Defendants' Motion should be denied as to Mrs. Suggs's claim for declaratory judgment.

## BACKGROUND

On the evening of July 18, 2020, Mrs. Suggs and her then-fiancé, and now husband, Terrell Suggs ("Mr. Suggs") were headed from Mr. Suggs's home to a Pizza Hut in Metairie, Jefferson Parish, Louisiana, when they were pulled over by Defendant Mikkelsen, Defendant Downing, and Defendant Naccari (the "Individual Defendants") without a legally permissible reason.  Compl. ¶¶ 17, 99.  Mrs. Suggs, a commercial driver who had not received a traffic ticket for well over a decade, was driving straight for almost half a mile when she was pulled over.  Compl. ¶¶ 18, 20-22.  Rather than requesting her license, the Individual Defendants immediately asked whether Mrs. Suggs and Mr. Suggs were on drugs and had any weapons.  Compl. ¶¶ 28, 37.  They demanded that Mr. Suggs exit the vehicle, patted him down, and found no evidence of a crime.  Compl. ¶ 38.  Mrs. Suggs disclosed that she had a registered gun in her zippered purse in the back of the car on the floor.  Compl. ¶¶ 29-30.

Rather than simply removing the purse from the vehicle, or the gun from the purse, without Mrs. Suggs's consent or any reason to believe that she was in possession of evidence of any crime, the Individual Defendants thoroughly searched Mrs. Suggs's purse and removed several bullets from her lawfully possessed gun.  Compl. ¶¶ 32-35, 43.  They also took her valid Georgia driver's license.  Compl. ¶ 43.  Neither the license nor the bullets have been returned, despite repeated requests.  Compl. ¶ 49.  When Mrs. Suggs asked why she had been pulled over, the Individual Defendants falsely claimed that Mrs. Suggs failed to signal, despite her having driven straight for almost half a mile and having signaled at the last place she had made a turn. Compl. ¶¶ 44-45.

Mrs. Suggs was stopped and her rights repeatedly violated because of her race as evidenced by, among other things, the lack of reason for the stop itself, the Individual Defendants' immediate and aggressive questioning about drugs and weapons, and unlawful searches of Mr. Suggs's person and Mrs. Suggs's purse in what appeared to be hopes of finding incriminating evidence.  Compl. ¶¶ 39, 42, 51.  Metairie is known for racial profiling by law enforcement, something of which Mrs. Suggs was aware.  Compl. ¶ 53.  The Individual Defendants' unlawful conduct was racially motivated and reflects the Individual Defendants' racial stereotyping.  Compl. ¶ 51.  They pulled her over not because she had done anything wrong, but because Mrs. Suggs is Black.  Compl. ¶ 99.

The lack of training, supervision, and discipline by Defendant Najolia was a motivating force behind the actions taken against Mrs. Suggs.  Despite EJLD PD issuing approximately 2,691 traffic tickets in the past six years, Defendant Najolia has not implemented any officer training on how to conduct these regularly occurring stops without violating the Fourth Amendment.  Compl. ¶ 70.  EJLD PD does not even require its officers to use body cameras as a

way of keeping them accountable.[6]  Furthermore, even though Metairie is known for racial profiling by the police, EJLD PD officers are not trained on the department's racial profiling policy.  Compl. ¶¶ 53, 56.  EJLD PD's racial profiling policy is only two sentences and contains no examples of prohibited behavior.  Compl. ¶ 56.  Ultimately, none of the Individual Defendants were disciplined for their violations of Mrs. Suggs's rights, conversion of her personal property, and multiple violations of department policies.  Compl. ¶¶ 66-69.  In fact, Mrs. Suggs's complaints were not meaningfully investigated by EJLD PD, and instead the Individual Defendants' misconduct was, and remains, condoned.  Compl. ¶¶ 89-91.

Mrs. Suggs was so distraught following her mistreatment by the Individual Defendants that she dropped off Mr. Suggs at his place, went alone to her place in Louisiana, and was up all night.  Compl. ¶ 59.  She continues to feel the ramifications of both the events of July 18, 2020 and Defendant Najolia's ongoing practices.  She has nightmares about the incident and fears driving in the area, despite her many ties there.  Compl. ¶¶ 19-20, 59.  Considering the persistent lack of training, supervision, and discipline by Defendant Najolia, it is exceedingly likely that Mrs. Suggs will be subject to this kind of behavior again.  This concern is only heightened by the demonstrated and perpetual violent behavior of police officers in Jefferson Parish towards Black citizens.[7]

---

[6] 2019 Body Camera Survey, Louisiana Commission on Law Enforcement at 5 (Mar. 1, 2020), http://lcle.la.gov/programs/uploads/2019%20Body%20Camera%20Survey%20%20House%20Concurrent%20Resolution%20No.%2052.pdf.

[7] *See, e.g.*, Alyssa Lukpat & Isabella Grullón Paz, Video Shows Louisiana Sheriff's Deputy Slamming Black Woman to the Ground, N.Y. TIMES (Oct. 18, 2021), https://www.nytimes.com/2021/10/18/us/shantel-arnold-jefferson-parish.html (describing a 2018 incident involving JPSO deputies inflicting injuries to the neck of a Black man, who later died); Richard A. Webster, "They Saw Me and Thought the Worst," PRO PUBLICA (Sept. 24, 2021), https://www.propublica.org/article/across-the-parish-line (describing multiple incidents of police violence and a disproportionate rate of use of force against Black citizens by the JPSO); ACLU of Louisiana Sues Police Officers for Unconstitutional and Unlawful Excessive
(continued...)

## PROCEDURAL HISTORY

Mrs. Suggs filed her Complaint on July 12, 2021. ECF No. 1. Among other relief, the

Complaint seeks a declaratory judgment under 28 U.S.C. § 2201 and Federal Rule of Civil

Procedure 57. Compl. ¶¶ 191-194. Mrs. Suggs asserts that Defendant Mikkelsen and Defendant

Downing violated her Fourth Amendment rights, and that Defendant Najolia has ongoing

policies of failing to train EJLD PD officers on how to conduct constitutional traffic stops and

failing to properly investigate complaints of misconduct and supervise and discipline those who

violate policies and constitutional rights. *Id*. On September 28, 2021, the EJLD PD Defendants

filed their Motion to dismiss the claim for declaratory relief under Rule 12(b)(6) for failure to

state a claim. ECF No. 18. On September 28, 2021, the EJLD PD Defendants filed their Answer

to Mrs. Suggs's Complaint. ECF No. 19.

## ARGUMENT

### I.     STANDARDS

A complaint must not be dismissed for failure to state a claim under Rule 12(b)(6) when

it contains sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009); *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946

F.3d 649, 658 n.16 (5th Cir. 2019) ("At the pleading stage, general factual allegations of injury

resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that

general allegations embrace those specific facts that are necessary to support the claim.")

(citation omitted).

EJLD PD Defendants seek dismissal under Rule 12(b)(6) for failure to state a claim.

---

Force Against Homeless Black Woman, ACLU (Apr. 8, 2021),
https://www.laaclu.org/en/press-releases/aclu-louisiana-sues-police-officers-unconstitutional-
and-unlawful-excessive-force (describing an incident in which two EJLD PD officers knocked
a homeless Black woman down to the ground).

Mot. at 1.  Accordingly, all well-plead facts must be taken as true and all reasonable inferences

must be made in plaintiff's favor.  *Spears v. C B & I, Inc.*, 2014 WL 5453884, at *3-4 (M.D. La.

Oct. 27, 2014) ("In deciding whether the complaint states a valid claim for relief, we accept all

well-pleaded facts as true and construe the complaint in the light most favorable to the

plaintiff.") (citation omitted); *see Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) ("A

claim is facially plausible if the plaintiff alleges facts that, accepted as true, allow a court 'to

draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (citation

omitted).  Mrs. Suggs's Complaint easily meets this liberal pleading standard.

EJLD PD Defendants are incorrect that a declaratory judgment "is only available in those

cases where a particular claim has not yet become justiciable, and declaratory relief is necessary

to prevent future harm or settle a case before a party incurs actual damages."  Mot. at 2.  To be

sure, such circumstances are appropriate for a plaintiff to pursue declaratory relief.  *See, e.g.*,

*Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993).  However, the

Fifth Circuit has made clear that prospective relief such as a declaratory judgment or an

injunction is available in additional circumstances as well.[8]

Where, as here, a plaintiff has already been harmed by the defendants' conduct,

prospective relief is available if either the plaintiff is suffering a continuing harm as a result of

the past alleged illegal conduct, or the plaintiff faces a real and substantial risk that she will be

---

[8] Defendants also rely on *Yankton v. Epps*, 2018 U.S. Dist. LEXIS 44453, at *4 (N.D. Miss. Feb. 15, 2018), to claim that declaratory relief is "only" available when a controversy has not reached a stage where parties may seek coercive remedies.  We respectfully submit *Yankton* was wrongly decided.  Coercive remedies, such as injunctions, are often coupled with requests for declaratory judgments.  *See, e.g.*, *Spencer v. City of Cibolo*, 2020 WL 5644884, at *3 (W.D. Tex. Sep. 22, 2020) (concluding plaintiffs had standing to assert both an injunction and declaration).  Additionally, "[t]he express purpose of the Federal Declaratory Judgment Act was to provide a milder alternative to the injunction remedy . . . ."  *Steffel v. Thompson*, 415 U.S. 452, 467 (1974).

wronged again.  *See Crawford v. Hinds Cty. Bd. of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021)

("[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement

[of standing] only by demonstrating a continuing injury or threatened future injury." (citation

omitted); *see also Evers v. Dwyer*, 358 U.S. 202, 203 (1958) (one past incident coupled with

ongoing policy served as evidence of sufficient immediacy and reality to warrant the issuance of

a declaratory judgment).  As explained below, Mrs. Suggs is both suffering a continuing harm as

a result of having been racially profiled by the EJLD PD Defendants, and faces a real and

substantial threat that she will be wronged again.

## II.     THE COMPLAINT ALLEGES FACTS DEMONSTRATING CONTINUING HARM

It is well established that plaintiffs facing continuing harm have standing to seek

prospective relief.  *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past

exposure to illegal conduct does not in itself show a present case or controversy regarding

injunctive relief . . . *if unaccompanied by any continuing, present adverse effects*.") (citation

omitted) (emphasis added).

One type of continuing harm that is sufficient for standing is when a plaintiff refrains

from engaging in lawful conduct because of the alleged wrongdoing.  *See, e.g.*, *Friends of the

Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 184-85 (2000)

(plaintiffs had standing to seek injunctive relief where they curtailed their use of a waterway they

otherwise would have used due to defendant's illegal conduct); *Evers v. Dwyer*, 358 U.S. 202,

203-04 (1958) (declaratory relief was proper because there was actual controversy as to whether

a statute barring a Black person from sitting in the front part of a bus was constitutional);

*Mohamed v. Holder*, 266 F. Supp. 3d 868, 875 (E.D. Va. 2017) (plaintiff's decision not to

engage in travel because of harm he reasonably expects to encounter is sufficient for standing to

seek injunctive relief); *Wilwal v. Nielsen*, 346 F. Supp. 3d 1290, 1302-03 (D. Minn. 2018) (one instance of prior travel was sufficient to conclude the plaintiff would engage in such travel again in the future, thus warranting prospective relief).

For example, in *Hernandez*, the Fifth Circuit held that a U.S. citizen who had been unlawfully denied entry into the United States from Mexico by U.S. Immigration and Naturalization Services agents had standing to pursue injunctive relief. 913 F.2d at 234. The plaintiff wanted to travel again to Mexico, but was refraining from doing so because he did not want to run the risk of being subjected to the same unlawful conduct. *Id.* Much like the EJLD PD Defendants in this action, the defendant there relied upon *Lyons* in arguing that the plaintiff had not shown a likelihood that he would suffer the same deprivation of his rights in the future. The court rejected the defendant's argument. It found "a critical factual distinction between *Lyons* and the instant case which dictate[d] a different result. Mr. Hernandez (unlike Mr. Lyons) was engaged in an activity protected by the Constitution." *Id.* Unlike Mr. Lyons, who would have had to violate the law in order to again face the challenged conduct, Mr. Hernandez faced the prospect of future harm by merely exercising his fundamental constitutional right to travel. The Fifth Circuit held that Mr. Hernandez could pursue prospective relief because of the "reasonable expectation" that he, as a citizen, would exercise his constitutional right to travel at some time in the future. *Id.* at 235. EJLD PD Defendants' Motion ignores this case entirely.

Just like Mr. Hernandez, it is reasonable to expect that Mrs. Suggs will again exercise her fundamental constitutional right to travel at some time in the future. And just like Mr. Hernandez, Mrs. Suggs is not currently fully exercising that right out of fear she will be again subjected to the same unlawful conduct she already experienced. Compl. ¶ 59. As alleged in the Complaint, Mrs. Suggs has strong connections in and ties to the areas patrolled by EJLD

PD officers.  She has a place in the area (*id.*), and could plausibly desire to visit a restaurant, such as a Pizza Hut, in the area again (*see* Compl. ¶ 20).  She should not have to live with the ongoing harm of avoiding a lawful activity, or risk being unlawfully pulled over because of her skin color the next time she drives in Jefferson Parish.  *See Frame v. City of Arlington*, 657 F.3d 215, 235-36 (5th Cir. 2011) (stating declaratory relief would be proper for plaintiffs who alleged enough facts to show how specific inaccessible sidewalks negatively affected their day-to-day lives by forcing them to take longer and more dangerous routes).

EJLD PD Defendants' reliance on *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308 (5th Cir. 1997) is misplaced.  There, no declaratory relief was available because one of the parties was deceased and the other purchased a different car, and so there was no live case or controversy.  To the contrary, here, Mrs. Suggs is alive and the EJLD PD continues to employ the offending officers and maintains its unconstitutional policies and practices.  Mrs. Suggs therefore has a live case or controversy that properly merits a declaratory judgment.

Even if Mrs. Suggs avoids travel in the area of Little Farms Avenue and Ivy Street, the fact the avoidance is caused by a persistent fear of an unconstitutional stop and search, including the possibility of a baseless arrest (*see* Compl. ¶ 48, where the Individual Defendants threatened Mrs. Suggs with jail time if she did not sign a ticket for a traffic infraction she did not commit), is sufficient for declaratory relief.  *See Steffel*, 415 U.S. at 459-60 (declaratory relief was appropriate where petitioner was dissuaded from an activity due to a threat of arrest). "The dilemma posed by that coercion – putting the [Plaintiff] to the choice between abandoning his rights or risking prosecution – is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'"  *MedImmune, Inc v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (citation omitted).  Even if Mrs. Suggs does not travel through the area where her unlawful stop

occurred, the "involuntary or coercive nature" of this action preserves her ability to obtain declaratory relief.  *Id.* at 131.

There is nothing hypothetical or abstract about Mrs. Suggs's injuries.

## III.   THE COMPLAINT ALLEGES FACTS DEMONSTRATING A REAL THREAT OF FUTURE HARM

The Complaint also alleges more than sufficient facts to demonstrate that Mrs. Suggs faces a real or immediate threat that she will be racially profiled and unlawfully stopped again in Jefferson Parish, Louisiana in the future.  As the EJLD PD Defendants acknowledge, a plaintiff seeking a declaratory judgment based on a threat of future harm "must show that there is a real or immediate threat that she will be wronged again."  Mot. at 2 (citing *Lyons*, 461 U.S. at 111).  The imminence of the future threat is an "elastic concept" that can accommodate uncertainty relating to when precisely the conduct Mrs. Suggs challenges in her Complaint will occur again.  *See Crawford*, 1 F.4th at 376.

In deciding whether a plaintiff faces a substantial risk of future harm, courts consider numerous factors, including whether the complaint alleges an officially sanctioned pattern of conduct, multiple instances of the same unlawful conduct, or an immutable characteristic of a plaintiff that results in risk of future harm.  *See, e.g.*, *Reed v. Giarrusso*, 462 F.2d 706, 710 (5th Cir. 1972); *Thomas v. Cty. of L.A.*, 978 F.2d 504, 507-08 (9th Cir. 1992); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242-44 (1937).  Each of these factors distinguishes *Lyons,* which the EJLD PD Defendants rely upon.  All of these factors exist here.  Mrs. Suggs alleges ample facts showing she faces a real threat of injury in the future because of EJLD PD's ongoing and condoned unlawful practices and widespread racial profiling, and because of her own immutable characteristics.

*First*, the Complaint alleges an ongoing pattern or practice of EJLD PD's failures to properly investigate citizen complaints and train or discipline officers accused of misconduct and racial bias. *See* Compl. ¶¶ 81-94. The Complaint alleges that EJLD PD failed to track citizen complaints for years, failed to investigate citizen complaints, and specifically alleged that EJLD PD failed to investigate Mrs. Suggs' Complaint and when pressed, conducted a wholly inadequate inquiry that has not resulted in discipline or training to this day. *See* Compl. ¶¶ 88-91. The EJLD PD's failure to investigate, train, and discipline officers is an ongoing official policy such that the risk of future harm to Mrs. Suggs is not imaginary or hypothetical but rather real and immediate. *See Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 125 (1974) (noting that although a strike had ended, the continuing policy of paying strike benefits which were harmful to plaintiffs was adequate for declaratory relief); *LaDuke v. Nelson*, 762 F.2d 1318, 1324, 1326 (9th Cir. 1985) (distinguishing *Lyons* and finding standing to seek injunction in part because the challenged practice was officially sanctioned), *amended in part on other grounds*, 796 F.2d 309 (9th Cir. 1986); *see also Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978) (noting that policy, for purposes of Section 1983, need not be written but can become official by pattern or practice that may "fairly be said to represent official policy"); *Allee v. Medrano*, 416 U.S. 802, 815 (1974) ("Where, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate.").

The Complaint further alleges that racial profiling is a practice of the EJLD PD Defendants and in the area in which Mrs. Suggs was stopped. *See* Compl. ¶¶ 19, 51, 53-56. The Complaint alleges specifically that "[t]he area of Metairie, Louisiana is known for racial profiling by police. Mrs. Suggs was aware of this fact, which is why she usually avoided driving through that neighborhood." Compl. ¶ 53. The "possibility of recurring injury ceases

to be speculative when actual repeated incidents are documented." *Thomas*, 978 F.2d at 507

(quoting *Nicacio v. United States I.N.S.*, 797 F.2d 700, 702 (9th Cir. 1985)); *accord Melendres*

*v. Arpaio*, 695 F.3d 990, 997-98 (9th Cir. 2012) (finding plaintiffs had standing to seek

injunction to enjoin racial profiling where, after discovery, plaintiffs presented evidence of

condoned profiling practice).   Recent investigations and public news reports demonstrate the

widespread policy within Jefferson Parish, where Mrs. Suggs was detained, of racial profiling

and the racially motivated harms stemming from or similar to those alleged in the Complaint.[9]

This ongoing policy and practice distinguishes *Lyons* and creates a real threat of future injury

sufficient for standing to seek declaratory relief.   *See Maryland State Conference of NAACP*

*Branches v. Maryland Dep't of State Police*, 72 F. Supp. 2d 560, 564-65 (D. Md. 1999)

(distinguishing *Lyons* and declining to dismiss request for injunctive relief where complaint

alleged pattern and practice of discriminatory traffic stops, cited reports of same, and plaintiffs

were likely to travel in same area again); *Nat'l Congress for Puerto Rican Rights v. City of New*

*York*, 75 F. Supp. 2d 154, 161-62 (S.D.N.Y. 1999) (distinguishing *Lyons* and declining to

dismiss requests for declaratory and injunctive relief concerning police's "stop and frisk"

policy where plaintiffs challenged official policy applied to numerous individuals).

---

[9] *See* "JPSO deputy under investigation after video shows him slamming Black woman's head on pavement," Nola.com, Oct. 16, 2021, https://www.nola.com/news/crime_police/article_469354fe-2e11-11ec-91ed-c7d91532f54a.html (video of officer violently dragging a Black crime victim by her hair and throwing her against the ground); Video Shows Louisiana Sheriff's Deputy Slamming Black Woman to the Ground," New York Times, Oct. 18. 2021, https://www.nytimes.com/2021/10/18/us/shantel-arnold-jefferson-parish.html (also noting accusations against Jefferson Parish for injuries to 22 year old and 16 year old with autism who later died); "They Saw Me and Thought the Worst," ProPublica, Sept. 24, 2021, https://www.propublica.org/article/across-the-parish-line (documenting repeated abuse of Black individuals by JPSO).   Plaintiff requests that the Court take judicial notice of the cited websites and articles.   *See Flax v. Potts*, 725 F. Supp. 322, 327 (N.D. Tex. 1989) (taking judicial notice of a newspaper article comparing district expenditures in predominantly Black schools and predominantly white schools), *aff'd and remanded on other grounds*, 915 F.2d 155 (5th Cir. 1990).

*Second*, Mrs. Suggs cannot avoid the harm her Complaint details because she is targeted by the EJLD PD Defendants' unchecked practices and cannot escape them. Mrs. Suggs was racially profiled by the EJLD PD Defendants who acted in accordance with the practice of their departments. *See* Compl. ¶¶ 51-54. Unlike in *Lyons*, which EJLD PD Defendants cite to support their position, Mrs. Suggs cannot "choose" to engage in conduct that would reduce her risk of harm. She cannot choose to change her skin color, an immutable characteristic that is out of her control and upon which her Complaint is based. *See Aetna Life*, 300 U.S. at 242-44 (declaratory relief was proper because the plaintiff's permanent and continuing disability was not "mutable" but rather a definite and controlling fact which could be finally determined and which would fix the rights and obligations he sought to have resolved). Given the prevalence of police profiling by departments servicing the Jefferson Parish area, and Mrs. Suggs's inescapable exposure to it, Mrs. Suggs cannot avoid the harm that she would experience. *Lyons* does not apply here. *See Honig v. Doe*, 484 U.S. 305, 320-21 (1988) (noting that *Lyons* does not apply where the conduct resulting in harm to handicapped plaintiff was out of her control); *Church v. City of Huntsville*, 30 F.3d 1332, 1338 (11th Cir. 1994) ("Because of the allegedly involuntary nature of their condition [of being homeless], the plaintiffs cannot avoid future 'exposure to the challenged course of conduct[.]'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).

EJLD PD Defendants would like to characterize Mrs. Suggs's claims as limited, specifically "only to the subject traffic stop and the EJLD PD's investigation thereafter" (Mot. at 4) but as the Fifth Circuit has held, future violations are likely where the department is free to continue the ongoing policy absent Court intervention. *See Spencer*, 2020 WL 5644884, at *3 (granting declaratory relief because it was likely to redress plaintiffs' injuries stemming

from defendants' allegedly unconstitutional policies).  As is clear by the facts alleged here, namely, that EJLD PD did not conduct an investigation into Mrs. Suggs's complaints (Compl. ¶¶ 83-91), has no significant training or updated lawful practice (Compl. ¶¶ 56, 70), the Court should intervene.  Mrs. Suggs is currently being deterred from exercising her fundamental constitutional right to travel because of EJLD PD Defendants' ongoing policy.  She need not wait in order to have her rights determined and protected.  *See Mortillaro v. State of La.*, 356 F. Supp. 521, 528 (E.D. La. 1972) ("[C]ourts have recognized that litigants who claim to be subject to unconstitutional regulation need not risk prosecution in order to test their rights.").

EJLD PD Defendants rely heavily on *Renee v. Peralez*, 2017 U.S. Dist. LEXIS 122885 (S.D. Tex. Aug. 3, 2017), which is readily distinguishable.  In *Renee*, the court granted the defendants' motion to dismiss because the complaint was devoid of facts reflecting that plaintiff had standing to seek declaratory relief.  As noted by the court before swiftly dismissing the issue in 8 sentences, "Ms. Renee does not undertake to allege any facts that would show her entitlement to a declaratory judgment in this case." *Id.* at *63.  Unlike in *Renee* where declaratory relief is first mentioned in the prayer of relief (*id.* at *62), Mrs. Suggs has separately identified a count for declaratory relief and incorporated within it all preceding facts in the Complaint, including the facts discussed above, which demonstrate both ongoing harm and a real risk of a repeated racial profiling incident in Jefferson Parish. *See* ¶¶ Compl. 191-194.

EJLD PD Defendants mischaracterize and overstretch the extent of the court's finding in *Renee*, portraying it as a meaningful analysis into the facts of the case as applied to the potential for declaratory relief.  The court made no such analysis or review and therefore the EJLD PD Defendants are without authority to support their contentions that the prevalence of

the official misconduct exhibited by their department has not created a real and immediate risk

or a live case or controversy to Mrs. Suggs qualifying her for declaratory relief.

## **CONCLUSION**

For the reasons set forth above, Mrs. Suggs respectfully requests that the Court deny the

EJLD PD Defendants' Motion to the extent it seeks dismissal of her request for declaratory

relief.  Should the Court find Mrs. Suggs's factual allegations insufficient, she respectfully

requests an opportunity to amend her Complaint.

Respectfully submitted,

Dated: November 2, 2021

*/s/ Robert. J. Dressel*
Robert J. Dressel (LA Bar No. 35757)
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
rdressel@barrassousdin.com

Nora Ahmed
(admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION OF
LOUISIANA
1340 Poydras Street, Suite 2160
New Orleans, Louisiana 70112
Telephone: (504) 444-6046
nahmed@laaclu.org

and

David J. Berger
(admitted *pro hac vice*)
Douglas W. McManaway
(admitted *pro hac vice*)
Yana Pavlova
(admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
dberger@wsgr.com
dmcmanaway@wsgr.com
ypavlova@wsgr.com

Tonia Ouellette Klausner
(admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
tklausner@wsgr.com

*Attorneys for Plaintiff Alexis Suggs*